SlKORA, J.
I. BACKGROUND
This case was before the court on December 5, 1996 for hearing on the above-captioned motions. The case involves claims for damages by Stone/Congress, the general contractor in a construction/renovation project involving the Andover High School, in the form of increased costs resulting from defects in the designs for the project prepared by the architect, Earl R. Flansburgh & Associates, Inc. (“ERF&A”). Stone/Congress advances a number of theories of recoveiy against the Town of Andover as owner of the project. As against ERF&A, Stone/Congress asserts that the defective plans constituted negligent misrepresentation, and also that ERF&A engaged in unfair and deceptive trade practices in violation of G.L.c. 93A.
The history of the project and dispute is long and involved. We will confine this opinion to the most relevant facts at appropriate points of discussion.
For the reasons which follow, the motions for summary judgment are DENIED.
II. ERF&A’S MOTION FOR SUMMARY JUDGMENT
In support of its motion for summary judgment, ERF&A makes four arguments: first, that the claims against it are barred by a “no damages for delay” provision contained in the contract between the Town of Andover and Stone/Congress (“the contract”); second, that the claims are barred by a covenant not to sue the architect, also contained in the contract; third, that the claim for negligent misrepresentation is precluded by the “economic loss doctrine”; and fourth, that the 93A claim is unsupported by any facts rising to the level of unfairness required for a claim pursuant to that section.
A. The “No Damages for Delay" Clause
ERF&A asserts that the “no damages for delay” clause bars Stone/Congress’s claims. The clause at issue, which appears as paragraph 8.3.5 of the contract, states: “The Contractor hereby agrees that the Contractor shall have no claim for damages of any kind against the Owner or the Architect on account of any delay in the commencement of the Work and/or any hindrance, delay or suspension of any portion of the Work, whether such delay is caused by the Owner, the Architect, or otherwise, except as and to the extent expressly provided under M.G.L-c. 30, s. 390 in the case of written orders by the Owner. The Contractor acknowledges that the Contractor’s sole remedy for any such delay and/or suspension will be an extension of time as provided in this Article.”
Stone/Congress argues that the costs it seeks to recover are not delay damages, and are provided for under the so-called “changes clause,” which appears as paragraph 7.3.1 of the contract and states: “A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work and stating a proposed basis for adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.” The costs to which Stone/Congress would be entitled pursuant to a Construction Change Directive are listed in paragraph 7.3.4.1, and include “the estimated or actual net increase or decrease in cost to the Contractor ... for performing the work covered by the change, including actual payments for materials, equipment rentals, expendable items, wages ...”
Stone/Congress has alleged that 174 construction change directives were issued through July 18, 1996, and that the costs it seeks are not delay damages, but direct costs resulting from the changes in the work. *331 Stone/Congress has provided an affidavit of the Project Manager to support these allegations. Proper characterization of the events in question as “delays” or “changes” will require factfinding beyond the scope of the present summary judgment affidavits and exhibits.[2] The court therefore rules that summary judgment pursuant to the “no damages for delay” provision is not appropriate.[3]
B. The Covenant Not to Sue
The contract states in paragraph 3.18.4: “(T]he Contractor agrees not to bring any civil suit, action or other proceeding in law, equity or arbitration against the Architect ... for the enforcement of any action which the Contractor may have arising out of or in any manner connected with the Work' (emphasis added). As ERF&A itself points out in its summary judgment memorandum, a covenant not to sue must be construed fairly and reasonably “to ascertain the intention of the parties and to effectuate their purpose.” Whittle v. Pagani Bros. Constr. Co., 383 Mass. 796, 798 (1981). As such, the provision must be read “like any ordinary contract, with attention to language, background and purpose.” Jones v. Vappi & Co., 28 Mass.App.Ct. 77, 79 (1989). It is a general rule in the construction of contracts that whenever practicable every word must be given some effect. Edmund Wright Ginsberg Corp. v. C.D. Kepner Leather Co., 317 Mass. 581, 587 (1945).
In light of these principles, the court disagrees with ERF&A’s assertion that the covenant not to sue bars “any claim connected to the Project.” The court bases its conclusion on the language of the covenant and the context in which it appears. The word “Work” is defined in paragraph 1.1.3 of the contract as “the construction and services required by the Contract Documents . . . and includes all labor, materials and equipment and services provided or to be provided by the Contractor to fulfill the Contractor’s obligations.” The covenant not to sue appears as a subparagraph to paragraph 3.18, entitled “Indemnification and Covenant Not to Sue,” which states that the Contractor shall indemnify the owner and architect “from and against any claims .. . arising out of or resulting from performance of the Work, provided that such claim ... is attributable to bodily injury, sickness, disease or death, or to destruction of tangible property. ..” (emphasis added). When the covenant not to sue is read in conjunction with these provisions, it becomes apparent that the covenant was meant to apply to physical injuries to person or property, and not to the present claims, which are not connected with “the Work” as defined and qualified in the contract.[4]
Furthermore, it seems improbable that a contractor such as Stone/Congress would agree to incur potentially enormous additional expenses not built into its bid submitted in reliance on the architect’s plans. ERF&A essentially argues that Stone/Congress waived any claim for increased expenses, no matter how large, resulting from any negligence of the architect in preparing the plans. It seems implausible that the contractor would agree to such a meaning of the provision.
C. The Economic Loss Doctrine
The court agrees with Stone/Congress that the economic loss doctrine does not preclude Stone/Congress from recovering against ERF&A for negligent misrepresentation. The economic loss doctrine prevents recovery in negligence for purely economic losses absent physical injury to person or property. See Stop & Shop Cos. v. Fisher, 387 Mass. 889, 893 (1983). The rationale of the doctrine is that a negligent party should not be liable to every person, no matter how unforeseeable, who may have somehow been affected by the negligence. For example, in Stop & Shop the plaintiff was a store which lost business when the defendant’s negligence damaged a bridge that led into the neighborhood where the plaintiffs business was located, preventing a substantial number of regular customers from patronizing the plaintiffs business during the time the bridge was closed for repairs. The Supreme Judicial Court held that the business could not recover for its purely economic losses. See Stop & Shop, 387 Mass. at 893-94.
The court does not believe that the economic loss doctrine was meant to preclude recovery where, as here, the architect knew that a contractor would be relying on its representations, as contained in the plans, to calculate its bid. Although ERF&A did not know the specific identify of the party to be so affected, in the ususal chronology of drafting, bidding and contracting, an architect does reasonably foresee that a general contractor will base its bid upon the architect’s plans and upon any deficiencies in those plans. In the circumstances of this case, the contractor is not a remote plaintiff, and the policy underlying the economic loss doctrine is not offended by holding ERF&A accountable to Stone/Congress which — as anticipated by ERF&A — relied on ERF&A’s plans.
The ruling on this point may seem at quick glance to diverge from several other Superior Court decisions cited by ERF&A. The court, however, questions the reliabilify of those decisions as guidance in the present case. In one of those cases, Tasco Construction, Inc. v. Town of Winchenden, No. 91-0308-C, slip op., 1 Mass. L. Rptr. 537 (Middlesex Super. Ct. Feb. 11, 1994), the court expressly rested its decision on a fact which is not present here: that the contractor had agreed to make its bid “in sole reliance upon its own investigations regarding the amounts of materials and labor. . . required.” See Tasco, slip op. at 6-7. Although the Tosco court implied that it could be dispositive that the defendant engineer did not know of the plaintiffs identity as the contractor at the time it provided the engineering plans, the court expressly avoided resting its decision on this fact.
*332 Two other decisions relied on by ERF&A stated that Massachusetts courts “have rejected the idea that architectural plans can ever constitute representations for purposes of a negligent misrepresentation claim.” Morse Company, Inc. v. First Healthcare Corp., No. 93-455, slip op. at 4 (Norfolk Super. Ct.), citing Craig v. Everett M. Brooks, Co., 351 Mass. 497, 499-500 (1967). See also Anastasi Brothers Corp. v. The Massachusetts Convention Center Authority, Nos. 89-0867B, 89-0198-C, 89-6480-E, 89-6481-A, 89-7721, 90-0898-C, slip op. at 5, 1 Mass. L. Rptr. 270 (Nov. 1, 1993) (“nor can [defendant’s] duties as architect . . . including preparation of plans and specifications, constitute representations for purposes of a negligent misrepresentation claim”), citing Craig, 351 Mass. at 501. The court questions the correctness of this assertion made in reliance on the Craig decision, and observes that the Craig court in fact expressly stated that the making of plans “[is] a form of representation." Craig, 351 Mass. at 499. The confusion on this point apparently arises because the Craig court held that the plaintiff had not made out its negligent misrepresentation claim as it pertained to the defendant’s engineering plans, but only as it pertained to the defendant’s surveying services. Nowhere does the Craig court exclude as a matter of law the preparation of architectural plans and specifications as a basis for a negligent misrepresentation claim. The precise holding and reasoning of Craig are that construction plans can embody actionable negligent misrepresentations but that the plaintiff had failed to introduce sufficient evidence of that cause of action in the particular circumstances of the case. See id. at 499-500.
The court’s view comports with the Restatement (Second) of Torts, s. 552(1) (1977): “One who, in the course of his business, profession or employment. . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.” See Lawton v. Dracousis, 14 Mass.App.Ct. 164, 171 (1982). Massachusetts common law has not carved out of this generic principle a special exception for architectural plans. Furthermore, the District Court for the District of Massachusetts recently held that an exception to the economic loss doctrine permits negligent misrepresentation claims for economic recovery where the plaintiff reasonably and foreseeably relied on the defendant’s promise to someone other than the plaintiff. The Vitetta Group v. Town of Plymouth C.A. 88-0882, 89-0061, slip op. at 1 (D.Mass. March 21, 1996). The Vitetta court denied summary judgment for the defendant on a claim that the plaintiff suffered economic damages in reliance on the defendant’s contract with the Town of Plymouth to perform “professional services.'’ See id.[5]
The summary judgment applicant must demonstrate the settled nature of both the material facts and the relevant rule of law requiring a decision in its favor. Smith & Zobel, Rules Practice s. 56.8 & n. 114 (cases collected). Here the application of the “economic loss” limitation is a very arguable point of law militating against summary judgment.
For these reasons, ERF&A’s motion for summary judgment on count XI of Stone/Congress’s complaint is denied.
D. The 93A Claim
As for the 93A claim, the court holds that Stone/Congress’ allegations — of ERF&A’s changes in the scope and nature of the work to be performed by Stone/Congress, and of ERF&A’s failure to grant time extensions — are sufficient to sustain a triable claim under 93A’s broad concept of unfairness. Therefore, ERF&A’s motion for summary judgment on count XII of Stone/Congress’s claim is denied as well.
III. THE TOWN OF ANDOVER’S MOTION FOR SUMMARY JUDGMENT
The Town of Andover asserts that all of Stone/Congress’s claims against it are barred by the “no damages for delay” provision contained in the contract. The Town referred the court to the argument of ERF&A on this point. Consequently we rely upon the reasoning above to deny the Town’s motion also.
ORDER
It is therefore ORDERED that both defendants’ motions for summary judgment are DENIED.

 The court therefore finds it unnecessary at this time to address the issue, argued extensively by the parties, whether a “bad faith,” “uncontemplated delay” or “cardinal change” exception to the enforcement of the “no damages for delay” provision is applicable in the present case. Likewise, the court declines to address the issue whether the defendants issued “stop work orders,” thus entitling Stone/Congress to recover for resulting delays under G.L.ch. 30, s. 390.

 The nature of a typical “no damages for delay” provision in a construction contract may require some explanatory evidence of custom and usage. Stone/Congress asserts that, as used in the construction industry, “damages for delay" refers to things such as extended home office overhead, interest on the contractor’s working capital employed in connection with the work, or an exorbitant dedication of executive, accounting, and administrative time. If the defendants wish to show that the “no damages for delay” provision means otherwise, they will have the opportunity at trial to introduce parol evidence to that effect.

 Another provision supplies context for the immunities and indemnification provisions of paragraph 3.18. Clause 3.18.3 states, “The obligations of the Contractor under this Paragraph 3.18 shall not extend to the liability of the Architect . . . arising out of (1) the preparation of maps, Drawings, opinions, reports, surveys, Change Orders, designs or Specifications, or (2) directions or instructions given by the Archi *333 tect . . . provided such instructions or directions are the primary cause of the injury or damage.”

 The court notes that one of ERF&A’s counsel in the present case was also the attorney of record for the defendant in the Vitetta case.

 The defendants’ “motions to strike” the plaintiffs opposition appear to function as thinly disguised reply briefs, not usually contemplated under Rule 56. The better practice would be to ask permission to submit a reply argument on an important point succinctly presented.