Haggerty, S. Jane, J.
This is an action brought by the plaintiff, the City of Everett (“Everett”), against the defendant, Barletta Engineering Corporation (“Bar-letta”), arising out of an owner-contractor agreement entered into by the parties. Barletta, as a third-party plaintiff, also brings claims against several third-party defendants involved in the construction project of the Lafayette Elementary School in Everett, Massachusetts, including the architect of the project, Flans- *407 burgh Associates, Inc. (“Flansburgh”). Everett brings two claims against Barletta. Count I alleges Barletta’s failure to complete the construction of the Lafayette School Building in accordance with the Contract Documents, and Count II alleges Barletta’s failure to construct a ballfield in accordance with the agreement. Included in Barletta’s claim against the third-party defendants are two claims against Flansburgh. Count I alleges negligence in preparation of the Contract Documents used to solicit bids by Everett, and Count II alleges negligent misrepresentation in Flansburgh’s depiction of the site conditions in the contract.
Flansburgh asserts that the owner-contractor agreement between Barletta and Everett contains a covenant not to sue Flansburgh which is enforceable, and that the economic loss doctrine bars the third-party claims. Barletta responds that the covenant not to sue does not apply to the claims against Flansburgh based on active negligence, and is unenforceable, and that the economic loss doctrine is inapplicable to the claims. The matter is before this court on Flansburgh’s motion for summary judgment as to all of Barletta’s claims against them.
For the reasons set forth below, Flansburgh Associates, Inc.’s motion for summary judgment as to all of Barletta Engineering Corporation’s claims against Flansburgh is ALLOWED.

BACKGROUND

This dispute arises as the result of defects in the fitness of the Lafayefte School Building. At this sum-maryjudgment stage, the facts are reported in the light most favorable to the non-moving party. Anderson Street Associates v. City of Boston, 442 Mass. 812,816 (2004), citing Augat Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).
Barletta and Everett entered into a general contract for the construction of the school building on March 5, 1998. The project was to be completed by July 5, 1999. Flansburgh prepared the Contract Documents, including the Plans and Specifications, which Everett utilized for the purpose of soliciting bids from potential general contractors. Barletta commenced construction in accordance with the Plans and Specifications after receiving the General Contract from Everett. Included in the Contract Documents was information regarding the site conditions at the project site, which Barletta also relied on.
During the construction process, Everett authorized certain change orders which resulted in adjustments to the contract price, as well as an extension of time to complete the project. Barletta was unable to meet the extension deadline, and did not achieve substantial completion of the project until October 25, 1999. However, the building was still not able to be occupied for its use as a school building until February 28, 2000 due to several problems. These included breakdowns of the heating system, problems with air balancing, broken ceiling tiles, and required cleaning of the building. In addition, significant water leaks have plagued the project, causing damage to the walls, ceilings, and floors. Covino Environmental Associates, Inc. was hired by Everett to conduct a visual inspection and environmental sampling of the building, and the resulting assessment revealed the presence of mold and microbial contamination.
As a result of these problems, as well as several other defects in the construction of the building, Everett has been denied its use and enjoyment of the property, the benefit of contract compliance, and has incurred significant expenses in maintenance and repair costs. In addition, Barletta’s failure to submit the required documentation verifying the sufficient fill and topsoil cover for the ball field on the properly led to Everett’s hiring of an independent consultant to verify the depth of the cover. The consultant reported that the cover was insufficient, and that the field was required to be closed down. Everett has incurred costs in assessing the cover for the field, as well as in contracting for remediation of the defects.
At issue is the language of the Owner-Contractor Agreement concerning a covenant not to sue. The Supplementary General Conditions of the agreement contains an additional paragraph that was added to paragraph 3.18 of the General Conditions. Paragraph 3.18.4 states as follows:
The Contractor, or any successor, assign or subro-gee of the Contractor, agrees not to bring any civil suit, action or other proceeding in law, equity or arbitration against the Architect, or the officers, employees, agents or consultants, of the Architect, for the enforcement of any action which the Contractor may have arising out of or in any manner connected with the Work. The Contractor shall assure that this covenant not to sue is contained in all subcontractors and subcontractors of every tier, and shall assure its enforcement. The Architect, its officers, employees, agents, and consultants are intended third-party beneficiaries of this covenant not to sue, who are entitled to enforce this covenant in law or equity.

DISCUSSION

Summary judgment is appropriate where the “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Highland Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997), citing Mass.R.Civ.P. 56(c). In a case such as this, where the opposing party will have the burden of proof at trial, the moving parly is entitled to summary judgment if he can demonstrate by reference to these materials, “unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of *408 proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The Supreme Judicial Court has stated that “an unambiguous agreement must be enforced according to its terms.” Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992), citing Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970). It is appropriate for a court to address the interpretation of such unambiguous terms of a contract as a matter of law. See Allstate Ins. Co. v. Secure, 412 Mass. 442, 446-47 (1992). The SJC has clearly established that there is no general rule in Massachusetts preventing a party from validly contracting for exemption from liability for its own negligence. Cormier v. Central Mass. Chapter of the Nat. Safety Council, 416 Mass. 286, 288-89 (1993).
In addressing the validity of a release in a contractual dispute, the Court has stated that “[a] party may, by agreement, allocate risk and exempt itself from liability that it might subsequently incur as a result of its own negligence.” Sharon v. City of Newton, 437 Mass. 99,105 (2002). The Court continued that pursuant to the laws of the Commonwealth, “in the absence of fraud a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting on his behalf.” Id., quoting Schell v. Ford, 270 F.2d 384, 386 (1st Cir. 1959). “Whether such contracts be called releases, covenants not to sue, or indemnification agreements, they represent ‘a practice our courts have long found acceptable.’ ” Sharon, 437 Mass, at 105, quoting Minassian v. Ogden Suffolk Downs, 400 Mass. 490, 493 (1987).
The Commonwealth has taken the approach that there is no reason to deny the enforcement of contracts which are arguably contracts of adhesion in the business context nor to designate them as unconscionable. Minassian, 400 Mass, at 492. Further, “[t]he allocation of risk by agreement is not contrary to public policy.” Id. at 493. In the absence of duress or improper pressure, such a clause in a contract can merely represent “sensible business judgments.” Id.[3]
In this case, the terms of the covenant not to sue are clear and unambiguous, and should therefore be enforced. Flansburgh appropriately allocated the risk and exempted itself from suit by Barletta pursuant to the terms of the contract. There is no evidence that Flansburgh engaged in any fraudulent conduct or that Barletta was placed under duress in signing the contract. The inclusion of the covenant not to sue does not violate any public policy of the Commonwealth. Further, even if we were to accept Barletta’s argument that the contract was a contract of adhesion, the covenant should still be enforced in such a business context.[4]

ORDER

For the foregoing reasons, it is hereby ORDERED that Flansburgh Associates, Inc.’s motion for summary judgment to all of Barletta Engineering Corporation’s claims against Flansburgh is ALLOWED.

In a recent Superior Court decision in Castagna Construction Corp. v. Town of Brookline, No. 02-818A (Oct. 5, 2004), Judge Whitehead upheld an identical covenant not to sue and entered summary judgment for the architect. Barletta cites a previous Superior Court decision, Stone/Congress v. The Town of Andover, 1997 WL 11737 (Mass.Super.) (6 Mass. L. Rptr. 330), issued by Judge Sikora, which denied a summary judgment motion because of the relation of the terms of the covenant not to sue with other provisions of the contract. Judge Whitehead acknowledged this holding in Castagna, but determined that the court had incorrectly emphasized the relation of the covenant to the other provisions and challenged the court’s emphasis on the intent of the parties. Castagna Judge Whitehead held that the general contractor actively sought out the contract by participating in the competitive bidding process, and thus it did not amount to a contract of adhesion. Id. Further, he stated that the covenant was not unenforceable on public policy grounds because the receipt of essential services was not involved, and that enforcing the covenant actually furthered important public policies in the Commonwealth. Id. This analysis is applicable here.

Flansburgh argues that the economic loss doctrine bars Barletta’s claims as an alternative basis for their motion for summary judgment. The court finds it unnecessary to address this argument based on the determination that the covenant not to sue is enforceable as to all of Barletta’s claims against Flansburgh.