## MERAV SHARON *vs.* CITY OF NEWTON.

Middlesex. April 2, 2002. - June 10, 2002.

Present (Sitting at Barnstable): MARSHALL, C.J., GREANEY, IRELAND, SPINA, & CORDY, JJ.

*Practice, Civil,* Answer, Amendment, Motion to amend. *Parent and Child,* Education. *Release. School and School Committee,* Liability for tort. *Public Policy. Contract,* Minor, Release from liability, Consideration. *Negligence,* Contractual limitation of liability, School. *Massachusetts Tort Claims Act. Governmental Immunity.*

In a negligence action in which the defendant failed to raise a release as an affirmative defense, the judge did not abuse her discretion in granting the defendant's motion to amend its answer to add the release as a defense, where the amendment did not raise a new issue on the eve of trial and could not be considered futile or irrelevant to the defense. [102-103]

In a case in which a minor (plaintiff) was injured while participating in a city's high school's cheerleading practice and later, having reached the age of majority, brought an action in negligence against the city, summary judgment was properly entered for the city on the basis of the plaintiff's father's authority to bind the plaintiff to an exculpatory release that was a proper condition of her voluntary participation in extracurricular sports offered by the city [103], where the facts contended by the plaintiff to be in dispute were not material [103-105]; where enforcement of the release was consistent with Massachusetts law and public policy [105-111]; where it was not contrary to the purposes of the Massachusetts Tort Claims Act to allow municipalities to use releases as a precondition for the participation in voluntary, nonessential activities they might sponsor [111-112]; and where the benefit bargained for, the minor's participation in the cheerleading program, was adequate consideration for the release [112].

CIVIL ACTION commenced in the Superior Court Department on November 5, 1998.

A motion to amend answer was heard by *Martha B. Sosman,* J., and the case was heard by *Leila R. Kern,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeffrey Petrucelly* for the plaintiff.

*Richard G. Chmielinski,* Assistant City Solicitor, for the defendant.

The following submitted briefs for amici curiae:

*Thomas J. Urbelis* for Massachusetts City Solicitors and Town Counsel Association.

*Michael K. Gillis & John J. St. Andre* for The Massachusetts Academy of Trial Attorneys.

*Leonard H. Kesten & Patricia M. Malone* for Massachusetts Municipal Association.

CORDY, J. In this case, we consider the question of the validity of a release signed by the parent of a minor child for the purpose of permitting her to engage in public school extracurricular sports activities. The question is one of first impression in the Commonwealth.

A. *Background.*

On November 8, 1995, sixteen year old Merav Sharon was injured while participating in a cheerleading practice at Newton North High School. Merav fell from a teammate's shoulders while rehearsing a pyramid formation cheer and sustained a serious compound fracture to her left arm that required surgery.[1] At the time of her injury, Merav had had four seasons of cheerleading experience at the high school level.

On November 5, 1998, having reached the age of majority, Merav filed suit against the city of Newton (city), alleging negligence (Count I) and the negligent hiring and retention of the cheerleading coach (Count II).[2] The city filed its answer on December 24, 1998. In late October, 1999, during the course of discovery, the city came across a document entitled "Parental Consent, Release from Liability and Indemnity Agreement" signed by Merav and her father in August, 1995, approximately three months prior to the injury. The relevant part of the release reads as follows:

"[I] the undersigned [father] . . . of Merav Sharon, a

---

[1] Merav Sharon's injury occurred during a cheerleading squad practice in the school's dance studio that was equipped with one-inch thick mats on the floor. The team used members of the squad as spotters while performing difficult stunts or cheers. While such spotters were in place at the time of Merav's injury, her spotter was not able to catch her or break her fall from the top of the pyramid.

[2] The negligence claims were brought against the city of Newton pursuant to the Massachusetts Tort Claims Act, G. L. c. 258.

minor, do hereby consent to [her] participation in voluntary athletic programs and do forever RELEASE, acquit, discharge, and covenant to hold harmless the City of Newton . . . from any and all actions, causes of action, [and] claims . . . on account of, or in any way growing out of, directly or indirectly, all known and unknown personal injuries or property damage which [I] may now or hereafter have as the parent . . . of said minor, and also all claims or right of action for damages which said minor has or hereafter may acquire, either before or after [she] has reached [her] majority resulting . . . from [her] participation in the Newton Public Schools Physical Education Department's athletic programs . . . ."

The city filed a motion for summary judgment raising the signed release as a defense.

Merav filed an opposition to the city's motion for summary judgment in which she argued that, because the release had not been raised as an affirmative defense in the city's answer, it should be deemed waived. Shortly thereafter, the city filed a motion to amend its answer in order to add the release as an affirmative defense. One judge in the Superior Court allowed the city's motion to amend on June 30, 2000, and a second judge subsequently allowed the city's motion for summary judgment based on the validity of the release.[3] In her ruling, the judge concluded that "[a] contrary ruling would detrimentally chill a school's ability to offer voluntary athletic and other extra-curricular programs."

Merav filed a timely appeal claiming that (1) the motion judge abused her discretion by allowing the city to amend its answer late; (2) the grant of summary judgment was inappropriate because genuine issues of material fact remained in dispute; and (3) the release signed by Merav and her father was invalid because (a) she disavowed it on attaining her majority[4]; (b) the release violates public policy; (c) the release is contrary to the

---

[3]The city also filed a motion to implead Merav's father as a third-party defendant based on the release. This motion was granted but the third-party complaint was subsequently dismissed as moot.

[4]The city concedes that minors may ratify or disaffirm their own contracts on reaching the age of majority. It prevailed below on the theory that Merav's father could effectively waive her claim by signing the release.

Massachusetts Tort Claims Act, G. L. c. 258, § 2; and (d) the release is invalid for lack of consideration. We transferred the case here on our own motion and now affirm the grant of summary judgment in favor of the city.[5]

B. *Discussion.*

1. *Amendment of the city's answer.* Merav claims that the allowance of the city's untimely motion to amend its answer was prejudicial error and that, because the city failed to raise the release as an affirmative defense in its original answer, the defense should be deemed waived.

It is well established that the defense of a release must be raised as an affirmative defense and that the omission of an affirmative defense from an answer generally constitutes a waiver of that defense. See Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974); *Leahy* v. *Local 1526, Am. Fed'n of State, County & Mun. Employees,* 399 Mass. 341, 351-352 (1987), citing J.W. Smith & H.B. Zobel, Rules Practice § 8.6, at 797-798 (1974 & Supp. 1986); *Coastal Oil New England, Inc.* v. *Citizens Fuels Corp.,* 38 Mass. App. Ct. 26, 29 n.3 (1995). It is equally well settled that a party may amend its pleading by leave of court and that such leave "shall be freely given when justice so requires." Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974). See *Foman* v. *Davis,* 371 U.S. 178, 182 (1962) (interpreting identical language in Federal rule and stating mandate that leave to amend "shall be freely given when justice so requires" is to be heeded).

Merav contends that the combination of undue delay and prejudice to her case should have led the judge to deny the city's motion to amend. While we have often upheld a judge's discretion to deny leave to amend based in part on undue delay, such denials have generally been coupled with consideration of other factors such as imminence of trial and futility of the claim sought to be added. See, e.g., *Leonard* v. *Brimfield,* 423 Mass. 152, 157 (1996); *Mathis* v. *Massachusetts Elec. Co.,* 409 Mass. 256, 264 (1991); *Castellucci* v. *United States Fid. & Guar. Co.,* 372 Mass. 288, 292 (1977). Given that the amendment in this

---

[5]We acknowledge amicus briefs of the Massachusetts City Solicitors and Town Counsel Association, the Massachusetts Municipal Association, and The Massachusetts Academy of Trial Attorneys.

case did not raise a new issue on the eve of trial and could not be considered futile or irrelevant to the city's defense, the judge did not abuse her discretion in granting the motion to amend the city's answer.

2. *Summary Judgment.*

By proffering the release signed by Merav and her father releasing the city from any claims that Merav might acquire from her participation in the city's athletic program, the city has met its initial burden of demonstrating that Merav's negligence claim is likely to be precluded at trial.[6] In response, Merav contends both that there are issues of material fact in dispute regarding the validity of the release, and that it is unenforceable as a matter of law and public policy. We conclude that the facts Merav contends are in dispute are not material, enforcement of the release is consistent with our law and public policy, and Newton is entitled to judgment as a matter of law.

a. *Merav's factual contentions.* Merav first argues that there are disputed issues of material fact regarding her understanding of the release and its voluntariness. She contends that neither she nor her father realized that by signing the release they were waiving their future claims against the school, and that their understanding of what they signed is a matter of fact to be decided by a jury. As the motion judge properly noted, "[i]t is a rule in this Commonwealth that the failure to read or to understand the contents of a release, in the absence of fraud or duress, does not avoid its effects." *Lee* v. *Allied Sports Assocs., Inc.,* 349 Mass. 544, 550-551 (1965). The undisputed evidence supports the conclusion that both Merav and her father had ample opportunity to read and understand the release before signing it, and they are therefore deemed to have understood it. *Cormier* v. *Central Mass. Chapter of the Nat'l Safety Council,* 416 Mass. 286, 289 (1993).

The release is a clearly labeled, two-sided document, which Merav brought home from school for her parents to review. Merav and her father both signed the front of the release, which they indicated was for the sport of "cheerleading." In addition,

---

[6]When a release is raised in defense of such a claim, the plaintiff bears the burden of proving that it is not a valid bar to her suit. See *Gannett* v. *Lowell,* 16 Mass. App. Ct. 325, 327 (1983).

they filled out the back of the release that called for information regarding Merav's address, date of birth, health insurance provider, and emergency contacts, and that provided for the purchase of optional student accident insurance through the school (an option that they explicitly declined on the form). Her father also signed the back of the release giving parental consent to a physical examination of Merav prior to her participation in the cheerleading program. In these respects, the circumstances differ substantially from the so-called "baggage check" or "ticket" cases relied on by Merav in which a customer merely purchases a ticket or receives a receipt that contains release language. See *Lee* v. *Allied Sports Assocs., Inc., supra*; *O'Brien* v. *Freeman*, 299 Mass. 20 (1937); *Kushner* v. *McGinnis*, 289 Mass. 326 (1935).

In these "baggage check" and "ticket" cases, we have ruled that the "type of document which the patron receives and the circumstances under which he receives it are not such that a person of ordinary intelligence would assume that the ticket limits the proprietor's liability unless the patron becomes actually aware of that limitation." *Lee* v. *Allied Sports Assocs., Inc., supra* at 549-550. Therefore, we have held in those cases that actual notice of the limitation of liability may be a question of fact properly submitted to the jury. This is not such a case. The release at issue here was clearly labeled as such and was filled out and signed by Merav and her father for the purpose of ensuring that she would be permitted to participate in an ongoing extracurricular activity. These are not circumstances likely to mislead a person of ordinary intelligence as to whether a limitation of liability might be included in the type of document being executed. There is no dispute that Merav and her father had ample opportunity to review and understand the release. Their failure to do so does not avoid its effects as a matter of law. *Id. Cormier* v. *Central Mass. Chapter of the Nat'l Safety Council, supra.*

Merav further argues that a jury should consider whether the release was signed under duress because, had she refused to sign it, she would not have been allowed to participate in cheerleading. This argument was not made to the motion judge, and is waived. But see *Minassian* v. *Ogden Suffolk Downs, Inc.*,

400 Mass. 490, 492 (1987) ("take it or leave it" release as condition of voluntary participation enforceable).

b. *Public policy.* Merav next contends that enforcement of the release against her claims would constitute a gross violation of public policy. This argument encompasses at least three separate public policy contentions: first, that it is contrary to public policy to permit schools to require students to sign exculpatory agreements as a prerequisite to participation in extracurricular school sports; second, that public policy prohibits a parent from contracting away a minor child's right to sue for a future harm; and third, that the enforcement of this release would undermine the duty of care that public schools owe their students.

In weighing and analyzing Merav's public policy arguments, we must also consider other important public policies of the Commonwealth implicated in the resolution of this issue, including policies favoring the enforcement of releases, and the encouragement of extracurricular athletic programs for school-aged children.

(1) *Releases.* Massachusetts law favors the enforcement of releases. *Lee* v. *Allied Sports Assocs., Inc.,* 349 Mass. 544, 550 (1965), citing *MacFarlane's Case,* 330 Mass. 573, 576 (1953). *Clarke* v. *Ames,* 267 Mass. 44, 47 (1929). A party may, by agreement, allocate risk and exempt itself from liability that it might subsequently incur as a result of its own negligence. See, e.g., *Lee* v. *Allied Sports Assocs., Inc., supra* at 550; *Barrett* v. *Conragan,* 302 Mass. 33 (1938); *Ortolano* v. *U-Dryvit Auto Rental Co.,* 296 Mass. 439 (1937). See also J.W. Smith & H.B. Zobel, Rules Practice § 8.18 (1974). "There can be no doubt . . . that under the law of Massachusetts . . . in the absence of fraud a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting on his behalf." *Schell* v. *Ford,* 270 F.2d 384, 386 (1st Cir. 1959). Whether such contracts be called releases, covenants not to sue, or indemnification agreements, they represent "a practice our courts have long found acceptable." *Minassian* v. *Ogden Suffolk Downs, Inc., supra* at 493. See *Shea* v. *Bay State Gas Co.,* 383 Mass. 218, 223-224 (1981); *Clarke* v. *Ames, supra* at 47.

The context in which such agreements have been upheld range beyond the purely commercial. In *Lee* v. *Allied Sports Assocs., Inc., supra,* we upheld a release signed as a prerequisite to a spectator entering the pit area of an automobile race, and in *Cormier* v. *Central Mass. Chapter of the Nat'l Safety Council,* 416 Mass. 286 (1993), we similarly upheld a release signed by a beginner rider as a condition of her enrollment in a motorcycle safety class. In both cases, the plaintiffs were subsequently injured by the allegedly negligent acts of the other party to the release. In the *Lee* case, *supra,* we concluded that the denial of the defendant's motion for a directed verdict was error on the basis of the validity of the release. In the *Cormier* case, *supra,* we upheld the granting of summary judgment on the same basis, holding that "placing the risk of negligently caused injury on a person as a condition of that person's voluntary choice to engage in a potentially dangerous activity ordinarily contravenes no public policy of the Commonwealth." *Id.* at 289. There is little that distinguishes the activity in the present case from those in the *Lee* and the *Cormier* cases.

Although Merav has suggested that, if the release at issue here is valid, there is nothing to prevent cities or towns from requiring releases for "simply allowing a child to attend school," such a conclusion does not necessarily follow. We have not had occasion to rule on the validity of releases required in the context of a compelled activity or as a condition for the receipt of essential services (e.g., public education, medical attention, housing, public utilities), and the enforceability of mandatory releases in such circumstances might well offend public policy. See *Cormier* v. *Central Mass. Chapter of the Nat'l Safety Council, supra* at 289 n.1, citing *Gonsalves* v. *Commonwealth,* 27 Mass. App. Ct. 606, 608 (1989) (exacting release of liability for negligence from public employee who was under compulsion to enroll in training course might offend public policy). See also Recent Case, 102 Harv. L. Rev. 729, 734 (1989) (importance of service to public should be paramount factor in deciding whether to invalidate exculpatory release on public policy grounds). In this case, Merav's participation in the city's extracurricular activity of cheerleading was neither compelled nor essential, and we conclude that

the public policy of the Commonwealth is not offended by requiring a release as a prerequisite to that participation.

(2) *Parent's waiver of a minor's claim.* Merav contends that a parent cannot waive, compromise, or release a minor child's cause of action, and that enforcement of such a release against the child would violate public policy. She relies on a series of decisions from other jurisdictions.[7] The city on the other hand relies on a series of cases holding to the contrary.[8] While these cases are instructive and emblematic of the difficulty in balancing the important interests and policies at stake, we first look to our own law.

Under our common law, "any contract, except one for necessaries, entered into by an unemancipated minor could be disaffirmed by him before he reached the age of [eighteen] or within a reasonable time thereafter." *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 692 (1975). This long-standing principle has been applied to releases executed by a minor as far back as 1292. See 5 S. Williston, Contracts § 9.2, at 5 (4th ed. 1993), citing Y.B. 20 and 21 Edw. at 318 (1292) (release by minor "would not bar him from suing when he came of age"). While the common-law rule has been narrowed somewhat by statute,[9] it remains our law that the contract of a minor is generally

---

[7]See *Fedor* v. *Mauwehu Council, Boy Scouts of Am., Inc.*, 21 Conn. Supp. 38 (1958) (release signed by parent waiving child's future claims violates public policy); *Meyer* v. *Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 146 (1994) (parent cannot waive, compromise, or release minor child's cause of action); *Doyle* v. *Bowdoin College*, 403 A.2d 1206, 1208 n.3 (Me. 1979) (release signed by parent before son's hockey injury void as to child's cause of action); *Childress* v. *Madison County*, 777 S.W.2d 1, 7 (Tenn. Ct. App. 1989) (release signed by mother void as to son's rights but valid as to mother's); *Scott* v. *Pacific W. Mountain Resort*, 119 Wash. 2d 484, 494 (1992) (en banc) (preinjury release signed by parent does not bar child's cause of action).

[8]See *Hohe* v. *San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559 (1990) (parent may execute release on behalf of minor child); *Cooper* v. *United States Ski Ass'n*, 32 P.3d 502 (Colo. Ct. App. 2000) (mother's release of minor child's claims for negligence valid and enforceable); *Zivich* v. *Mentor Soccer Club, Inc.*, 82 Ohio St. 3d 367 (1998) (mother had authority to bind minor child to exculpatory agreement).

[9]See, e.g., G. L. c. 167E, § 10 (student under eighteen years of age admitted to institution of higher learning has full legal capacity to act on her own behalf in contracts and other transactions regarding financing of education); G. L. c. 175, § 128 (certain contracts for life or endowment insurance may

voidable when she reaches the age of majority. Merav unequivo-
cally repudiated the release (to the extent it might be deemed a
contract executed by her) by filing suit against the city. See
*G.E.B.* v. *S.R.W.*, 422 Mass. 158, 164 (1996) (minor's filing of
suit is direct repudiation of contract not to sue signed by minor).
The city concedes that Merav effectively disaffirmed the release,
but contends that insofar as the release is signed by the parent
and purports to release the school from any claim that might ac-
crue to the minor, it remains valid because the parent can do
what the minor cannot.

The purpose of the policy permitting minors to void their
contracts is "to afford protection to minors from their own
improvidence and want of sound judgment." *Frye* v. *Yasi*, 327
Mass. 724, 728 (1951). This purpose comports with common
sense and experience and is not defeated by permitting parents
to exercise their own providence and sound judgment on behalf
of their minor children. *Parham* v. *J.R.*, 442 U.S. 584, 602
(1979) ("The law's concept of the family rests on a presump-
tion that parents possess what a child lacks in maturity, experi-
ence, and capacity for judgment required for making life's dif-
ficult decisions"). See 1 W. Blackstone, Commentaries 452 (9th
ed. 1783) (minor's consent to marriage void unless accompanied
by parental consent; one of many means by which parents can
protect children "from the snares of artful and designing
persons"). Moreover, our law presumes that fit parents act in
furtherance of the welfare and best interests of their children,
*Petition of the Dep't of Pub. Welfare to Dispense with Consent
to Adoption*, 383 Mass. 573, 587-589 (1981); *Sayre* v. *Aisner*,
51 Mass. App. Ct. 794, 799 n.8 (2001), and with respect to mat-
ters relating to their care, custody, and upbringing have a
fundamental right to make those decisions for them. See *Par-
ham* v. *J.R.*, *supra* at 603 (parents can and must make judg-
ments and decisions regarding risks to their children).

In the instant case, Merav's father signed the release in his

not be voided by minor over fifteen years of age); G. L. c. 175, § 113K
(minor over sixteen years of age permitted to contract for motor vehicle li-
ability insurance); G. L. c. 112, § 12E (minor over twelve years of age found
to be drug dependent may consent to treatment for dependency); G. L. c. 112,
§ 12F (minor may consent to medical or dental treatment if she meets criteria
outlined in statute).

capacity as parent because he wanted his child to benefit from participating in cheerleading, as she had done for four previous seasons. He made an important family decision cognizant of the risk of physical injury to his child and the financial risk to the family as a whole. In the circumstance of a voluntary, nonessential activity, we will not disturb this parental judgment. This comports with the fundamental liberty interest of parents in the rearing of their children, and is not inconsistent with the purpose behind our public policy permitting minors to void their contracts.[10]

c. *The encouragement of athletic activities for minors.* Our views with respect to the permissibility of requiring releases as a condition of voluntary participation in extracurricular sports activities, and the enforceability of releases signed by parents on behalf of their children for those purposes, are also consistent with and further the public policy of encouraging athletic programs for the Commonwealth's youth. This policy is most clearly embodied in statutes that exempt from liability for negligence nonprofit organizations and volunteer managers and coaches who offer and run sports programs for children under eighteen years of age (G. L. c. 231, § 85V), and owners of land (including municipalities) who permit the public to use their land for recreational purposes without imposing a fee (G. L. c. 21, § 17C). See *Anderson* v. *Springfield,* 406 Mass. 632 (1990) (city not liable for injuries to softball player resulting from negligently caused defect in city-owned baseball field).

To hold that releases of the type in question here are

---

[10]Our conclusion that parents may execute an enforceable preinjury release on behalf of their minor children is not inconsistent with our policy regarding discretionary court approval of settlement releases signed by minors. See G. L. c. 231, § 140C ½ (allowing judge to approve settlement for damages stemming from personal injury to minor where parties have petitioned for such approval). This statute applies only to postinjury releases, and the policy considerations underlying it are distinct from those at issue in the preinjury context. A parent asked to sign a preinjury release has no financial motivation to comply and is not subject to the types of conflicts and financial pressures that may arise in the postinjury settlement context, when simultaneously coping with an injured child. Such pressure can create the potential for parental action contrary to the child's ultimate best interests. In short, in the preinjury context, there is little risk that a parent will mismanage or misappropriate his child's property. See *Zivich* v. *Mentor Soccer Club, Inc.,* 82 Ohio St. 3d 367, 373 (1998).

unenforceable would expose public schools, who offer many of the extracurricular sports opportunities available to children, to financial costs and risks that will inevitably lead to the reduction of those programs.[11] It would also create the anomaly of a minor who participates in a program sponsored and managed by a nonprofit organization not having a cause of action for negligence that she would have had had she participated in the same program sponsored as an extracurricular activity by the local public school. This distinction seems unwarranted, inevitably destructive to school-sponsored programs, and contrary to public interest.

Merav contends that to enforce the release would convey the message that public school programs can be run negligently, in contravention of the well-established responsibility of schools to protect their students. We disagree. There are many reasons aside from potential tort liability why public schools will continue to take steps to ensure well-run and safe extracurricular programs — not the least of which is their ownership by, and accountability to, the citizens of the cities and towns they serve. Moreover, the Legislature has already made the judgment that the elimination of liability for negligence in nonprofit sports programs is necessary to the encouragement and survival of such programs. It can hardly be contended that the enactment of G. L. c. 231, § 85V, was an endorsement by the Legislature of the negligent operation of nonprofit programs or an act likely to encourage the proliferation of negligence. School extracurricular programs are similarly situated.[12] The enforcement of the release is consistent with the Commonwealth's policy of

[11]The fact that G. L. c. 258, § 2, may limit the financial exposure of municipalities to $100,000 per claim (plus defense costs) does not insulate them from the deleterious impact of inherently unknowable financial risk. Public schools are not required by State law to offer voluntary extracurricular sports programs. Compare G. L. c. 71, § 3 ("[p]hysical education *shall be* taught as a required subject in all grades for all students in the public schools . . ." [emphasis added]), with G. L. c. 71, § 47 (cities and towns "may appropriate" money for employment of coaches and for support of extracurricular activities). Consequently, in times of fiscal constraint, those programs are often the targets of budget reductions. A decision exposing school systems to further financial costs and risk for undertaking such programs cannot help but accelerate their curtailment.

[12]Our holding is not intended to abrogate or qualify the special relationship that exists between a school and its students recognized in prior decisions, but

encouraging athletic programs for youth and does not contravene the responsibility that schools have to protect their students.

d. *Massachusetts Tort Claims Act.* Merav's reliance on G. L. c. 258, § 2, to support her claim that cities and towns should not be permitted to require or enforce releases regarding their negligent conduct, is misplaced. While the purpose of the Act may be to provide a remedy for persons injured as a result of the negligence of government entities, see *Vasys* v. *Metropolitan Dist. Comm'n,* 387 Mass. 51, 55 (1982), it does so by abrogating sovereign immunity only within a narrow statutory framework. The Act does "not create any new theory of liability for a municipality," *Dinsky* v. *Framingham,* 386 Mass. 801, 804 (1982), but rather, specifically provides that they are liable "in the same manner and to the same extent as a private individual under like circumstances." G. L. c. 258, § 2. Outside of the procedural limitations and exceptions contained within the Act, cities and towns are afforded the same defenses as private parties in tort claims. See *Dinsky* v. *Framingham, supra.* Because releases of liability for ordinary negligence involving private parties are valid as a general proposition in the Com-

---

not involving the validity of an exculpatory release required for participation in an extracurricular activity. See, e.g., *Whitney* v. *Worcester,* 373 Mass. 208 (1977) (sight-impaired student injured by defective door during school hours); *Alter* v. *Newton,* 35 Mass. App. Ct. 142 (1993) (student hit in eye by lacrosse ball while waiting in school yard for parent).

It is also limited to the claims before us — and those claims concern ordinary negligence. The city specifically disavows any contention that the release here would relieve it from liability for gross negligence or reckless or intentional conduct. See *Zavras* v. *Capeway Rovers Motorcycle Club, Inc.,* 44 Mass. App. Ct. 17, 18-19 (1997), citing *Gillespie* v. *Papale,* 541 F. Supp. 1042, 1046 (D. Mass. 1982) (releases effective against liability for ordinary negligence but substantial outside authority holds same not true for gross negligence). Commentators have readily distinguished the public policy implications of exculpatory releases whose only effect is relief from ordinary negligence from those intended to relieve a party from gross negligence, or reckless or intentional conduct. See Restatement (Second) of Contracts § 195(1) (1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy"); 6A A. Corbin, Contracts § 1472, at 596-597 (1962) ("such an exemption [from liability] is always invalid if it applies to harm wilfully inflicted or caused by gross or wanton negligence"); W.L. Prosser & W.P. Keeton, Torts § 68, at 484 (5th ed. 1984) ("such agreements generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross").

monwealth, it is not contrary to the purposes of the Act to allow municipalities to use releases as a precondition for the participation in voluntary, nonessential activities they may sponsor.

e. *Consideration.* Merav last argues that the release she signed is void because it was not supported by proper consideration. The motion judge properly concluded that the benefit bargained for, in this case Merav's participation in the cheerleading program, was adequate consideration for the release. See Restatement (Second) of Torts § 496B (1965) (not essential that agreements to assume risk of negligence be for consideration; consent by participation in activity may be sufficient).

C. *Conclusion.*

For the reasons set forth above, we conclude that Merav's father had the authority to bind his minor child to an exculpatory release that was a proper condition of her voluntary participation in extracurricular sports activities offered by the city. Summary judgment for the city that was entered on the basis of the validity of that release is therefore affirmed.

*So ordered.*