Lauriat, J.
This action was commenced as a result of an alleged injury sustained by the minor plaintiff, *504 Kathryn Quirk (“Kathryn”), while she was practicing a gymnastics maneuver before a competition. After she sustained her alleged injury, Kathryn, her mother Barbara, and her father William, brought this action against Walker’s Gymnastics & Dance and Reginald Walker, Sr., Reginald Walker, Jr. and Melissa Perritano. In their Second Amended Complaint, the plaintiffs have alleged counts of negligence (Counts One through Four) and loss of consortium (Counts Six through Nine and Eleven through Fourteen). All four defendants have now moved for summary judgment.[1] For the reasons stated below, the defendants’ motions are denied.
BACKGROUND
Plaintiff Kathryn Quirk lives in Chelmsford, Massachusetts with her parents, plaintiffs Barbara Quirk (“Mrs. Quirk”) and William Quirk (“Mr. Quirk”). The defendant Walker’s Gymnastic & Dance (“Walker’s”) is a company with a usual place of business at 312 Plain Street in Lowell, Massachusetts. Defendants Reginald Walker, Sr. (“Walker, Sr.”) and Reginald Walker, Jr. (“Walker, Jr.”) are residents of Lowell, Massachusetts, and defendant Melissa Perritano (“Perritano”) is a resident of Chelmsford, Massachusetts. Walker, Jr. was the head coach at Walker’s and a part owner of the business. Perritano was an assistant coach for Walker’s and she was in charge of the team for which Kathryn was competing at the time of her injury. Walker, Sr. is the father of Walker, Jr. and the co-owner of Walker’s.
Walker’s provides instruction and coaching for children in the sport of gymnastics. Kathryn became a student at Walker’s when she was eight years old, and had been a student at Walker’s for approximately three years prior to November 23, 1997, the date of her alleged injuries. Kathryn had gradually progressed from a “Level 5" gymnast to a ’’Level 7" gymnast over her years of coaching and instruction.[2] On the day of her injury, Kathryn was to participate in a gymnastics competition as a member of Walker’s team. The event was called the Pilgrim Invitational, and took place at Algonquin High School in Northboro, Massachusetts. The Pilgrim Invitational was hosted by an entity called Giguere Gymnastics.[3]
Kathryn’s injury occurred as she was warming up on the practice floor for the floor exercise segment of the competition. At that time she was attempting a “round-off back hand spring full back flip with a full twist in the air.” At the end of this attempted maneuver, Kathryn landed completely off-balance, with all of her weight on her right foot. She fell to the ground, was assisted, and eventually taken to the hospital where she was diagnosed as having sustained a fracture of her right ankle.
The gravamen of the plaintiffs’ claim is that the defendants negligently failed to provide adequate training and preparation for Kathryn, and failed to insure that she was “performance ready” with respect to the routine that she was preparing to perform at the time of her injury. On or about July 23, 1997, approximately four months before the accident, Mrs. Quirk signed a Team Member Application (“the Application”) for Kathryn to participate in the 1997-1998 season as a member of Walker’s team. It was necessary for the Application to be completed in order for Kathryn to participate in events sanctioned by USA Gymnastics. The Application itself is a document with the terms and conditions stated in the middle of the first page. There are three conditions set forth therein, the third of which reads:
3. Waiver and Release: I am fully aware of and appreciate the risks, including the risk of catastrophic injury, paralysis and even death, as well as other damages and losses associated with participation in a gymnastics event. I further agree that USA Gymnastics, the host organization, and sponsors) of any USA Gymnastics sanctioned event, along with the employees, agents, officers and directors of these organizations, shall not be liable for any losses or damages occurring as a result of my participation in the event, except where such loss or damage is the result of the intentional or reckless conduct of one of the organizations or individuals identified above.
(Emphasis added.) At issue in this case is whether, on the summary judgment record, Walker’s was a “sponsor” of the Pilgrim Invitational gymnastics meet such that the defendants can avoid liability, as a matter of law, pursuant to the “Waiver and Release.”
DISCUSSION
Summary judgment will be granted where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party has the burden of affirmatively demonstrating that there is no genuine issue of material fact, and that the record entitles it to judgment. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). In deciding a motion for summary judgment, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Mass.R.Civ.P. 56(c); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976).
When reviewing a summary judgment record, the court must credit well-pleaded facts in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992). However, bare assertions of inferences raise no genuine issue of material fact so as to defeat summary judgment. Federal Deposit Ins. Corp. v. Csongor, 391 Mass. 737, 742-43 (1984), see also First Nat. Bank of Boston v. Slade, 379 Mass. 243, 246 (1979) (neither vague allegations and conclusory statements, nor assertions of inferences not based on underlying facts will suffice to demon *505 strate genuine triable issue on motion for summary judgment).
I. The Waiver and Release Provision
Massachusetts courts have recognized the notion of prospectively releasing a party from liability and waiving any future claims arising out of negligent action. Lee v. Allied Sports Associates, Inc., 349 Mass. 544, 550 (1965) (party “could validly exempt itself from liability which it might subsequently incur as a result of its own negligence”); see also Cormier v. Central Massachusetts Chapter of the National Safety Council 416 Mass. 286, 288 (1993); Zarvas v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct. 17, 18 (1997). In fact, “Massachusetts law favors the enforcement of releases.” Sharon v. City of Newton, 437 Mass. 99, 105 (2002) (citations omitted). The “context in which such agreements have been upheld range beyond ... purely commercial” disputes. Sharon, 437 Mass. at 106. Such releases are clearly enforceable even when signed by a parent on behalf of their child.[4] Id. at 107-12. However, “any doubts about the interpretation of [a] release must be resolved in the plaintiffs favor.” Cormier, 416 Mass. at 288, citing Lechmere Tire & Sales Co. v. Burwick, 360 Mass. 718, 721 (1972).
The question this court must decide is whether the “Waiver and Release” provision of the Application releases the defendants from liability in this case. The four defendants contend that they all qualify as “sponsors of the USA Gymnastics sanctioned events” as defined in the Application, and that judgment should therefore enter in their favor as a matter of law. According to the plaintiffs, Kathryn was a “representative” of Walker’s as a “team member” at the incident event. She was a “participant” and/or “competitor” at the event. In the plaintiffs’ view, Walker’s was also a “participant” and/or a “competitor” in the event based on the team entry fee which it paid. The plaintiffs further contend that while Walker’s was the “Host Organization” at four other gymnastics events during the 1997-1998 season, Walker’s was not the host of the November 23, 1997 event, and did not at any time qualify as a “sponsor” for purposes of the Application.
The plaintiffs ask this court to deny the defendants’ motions for summary judgment because the meaning of “sponsor” in the “Waiver and Release” provision of the Application is a material fact in dispute. See Pederson, 404 Mass. at 17 (moving party “assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact... even if he would have no burden on an issue if the case were to go to trial”). Notably, the Application itself nowhere defines the term “sponsor.” The defendants assert that they all qualify as “sponsors of a USA Gymnastics sanctioned event” for two reasons: the defendants fit within the definition of “sponsor” found in the American Heritage Dictionary,[5] and the liability-limiting language in the release is sufficiently broad to extend beyond USA Gymnastics and the event host, Giguere Gymnastics.
The plaintiffs view the defendants’ reasoning as a creative attempt to stretch the intent of the Application. The plaintiffs point out, by way of expert affidavit,[6] that it is well known in the field of gymnastics, and in other realms of organized sports, that a “sponsor” is an outside corporate or business entity, or a private individual, who contributes money to help absorb the cost of running a particular sporting event.
“If a contract... is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment.” Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002). “Where, however, the contract . . . has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial.”[7] Id. This court concludes that the plaintiffs have raised a sufficient question of material fact, that being the reasonable difference of opinion regarding the term “sponsor” in the Application. Thus this action is not ripe for summary judgment, and the defendants’ motions for summary judgment must be denied.
ORDER
For the foregoing reasons, (1) Defendants Walker Gymnastics and Dance and Reginald Walker, Sr.’s Motion for Summary Judgment on Counts I, II, VI, VII, XI and XII of the Plaintiffs’ Second Amended Complaint is DENIED, and (2) Motion for Summary Judgment of the Defendants, Reginald Walker, Jr. and Melissa Perritano on Counts III, IV, VIII, IX, XIII and XTV of the Plaintiffs’ Second Amended Complaint Pursuant to Rule 56 M.R.C.P. is DENIED.

Defendants Walker’s Gymnastics and Dance and Reginald Walker, Sr. have brought a motion seeking summary judgment on Counts One, Two, Six, Eleven, and Twelve; and defendants Reginald Walker, Jr. and Melissa Perritano have brought one motion seeking summary judgment on Counts Three, Four, Eight, Nine and Fourteen of the plaintiffs’ Second Amended Complaint. The arguments of all four defendants are the same, and each pair rely upon by reference the other’s motion and supporting memoranda.

For purposes of USA Gymnastics sanctioned events, athletes compete at varying skill levels.

Giguere Gymnastics, Inc. is a duly organized Massachusetts corporation with a principle place of business in Leicester, Massachusetts. Giguere was originally a defendant in this action but the claims brought against it (Counts Five, Ten and Fifteen) have been dismissed.

The court notes, as is pointed out by the parties, that in addition to Mrs. Quirk, Kathryn signed the Application. However, Kathryn’s signature would not provide a basis for considering summary judgment because “contracts of minors are voidable at the option of the minor in accordance with the policy of the law to afford protection to minors from their own improvidence and want of sound judgment.” Frye v. Yasi, 327 Mass. 724, 728 (1951); see also Sharon, 437 Mass. at 108.

The American Heritage Dictionary defines “sponsor” in many ways; the definition relied on by the defendants is “[o]ne who assumes responsibility for a person or group during a period of instruction, apprenticeship, or probation.”

See Affidavit of Gerald S. George, Ph.D., attached as Exhibit 5 to the Plaintiffs’ Memorandum of Law in Opposition to the Motions of the Defendants.

“Contract language is ambiguous where ‘an agreement’s terms are inconsistent on their face or where the phraseology-can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.’ ” Suffolk Construction Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999), quoting Fashion House, Inc. v. KMart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989).