Whitehead, Howard J., J.
BACKGROUND
This case arises out of a contract between the Town of Brookline (Brookline) and Castagna Construction Corporation (Castagna or plaintiff) for the renovation of the Edith Baker School, a public construction project on which plaintiff Castagna served as general contractor and defendant Perry Dean Rogers & Partners: Architects (Perry Dean or defendant) served as project architect. In addition to certain claims against Brookline, Castagna charges Perry Dean with negligent misrepresentation of the project’s plans and specifications, as well as unfair and/or deceptive trade or business practices, in violation of M.G.L.c. 93A, Sec. 11, and seeks to recover damages it allegedly incurred during completion of the project. Perry Dean now moves for summary judgment on the claims brought against it (Counts IV and V of the Complaint). For the reasons stated below, the motion is ALLOWED.
FACTS
The summary judgment record reveals the following relevant facts. Brookline hired Perry Dean on or about September 1, 1997 to perform architectural services with respect to the project. The project went out for public bid, and Castagna was deemed to have submitted the lowest eligible and responsive general bid. Castagna and the Town executed a general contract on February 9, 1999 (the contract). An express condition of the contract was as follows:
The Contractor, or any successor, assign or subro-gee of the Contractor, agrees not to bring any civil suit, action or other proceeding in law, equify or arbitration against the Architect, or the officers, employees, agents, or consultants, of the Architect, for the enforcement of any action which the Contractor may have arising out of or in any manner connected with the Work . . . The Architect, its officers, employees, agents, and consultants are intended third-party beneficiaries of this covenant not to sue, who are entitled to enforce this covenant in law or equity.
The “Work” is defined under the Contract as follows:
The term “Work” means the construction required by the Contract Documents, including all labor necessary to produce such construction, and all *448 materials and equipment incorporated or to be incorporated therein.
The original contract price was $7,764,231.29. During the course of construction, Castagna performed additional work valued at $683,878.94. Some of the additional work, Castagna contends, was necessitated by Perry Dean’s negligent drafting of plans. Castagna seeks, among other things, to recover from Perry Dean the value of that work.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Our courts hold that covenants not to sue are generally enforceable. Minassian v. Ogden Suffolk Downs, 400 Mass. 490, 493 (1987) (stating that the enforcement of agreements that release a party from liability is “a practice our courts have long found acceptable”). In Massachusetts, “(t]here is no rule of general application that a person cannot contract for exemption from liability for his own negligence and that of his agents and servants.” Clark v. Ames, 267 Mass. 44, 47 (1929), cited in Cormier v. Central Massachusetts Chapter of the National Safety Council, 416 Mass. 286, 288 (1993). Thus, “a party may, by agreement, allocate risk and exempt itself from liability that it might subsequently incur as a result of its own negligence.” Sharon v. City of Newton, 437 Mass. 99, 105 (2002). Massachusetts law favors the enforcement of such agreements. Id. There are, however, several circumstances under which covenants not to sue are unenforceable, including agreements procured by fraud, duress, or deceit and agreements that offend public policy. Id. at 103-04.
Here, plaintiff asserts that circumstances surrounding the negotiation of the contract, specifically plaintiffs alleged inability to negotiate the covenant at issue, was tantamount to duress. The court does not agree. Plaintiff does not contend, and the court does not find, that plaintiff was pressured to enter into the agreement. On the contrary, plaintiff, a general contractor with over 18 years of experience, actively sought out this contract though its participation in the competitive bidding process. (See Castagna Aff. ¶2-3.) Moreover, even if the circumstances resulted in a contract of adhesion — and the court does not find that it does — that factor alone would not serve to invalidate the covenant here. Our courts have enforced covenants not to sue contained in adhesion contracts when they were executed in a business context such as this. Minassian, 400 Mass. at 492. Finally, plaintiff does not allege that the covenant was in small print or otherwise presented in such a way that it was difficult to read or understand. Consequently, the covenant not to sue cannot be invalidated on the grounds of fraud, duress, or deceit.
A covenant may also be declared unenforceable on public policy grounds. See Sharon, 437 Mass. at 105-06. Our courts have not articulated a test to determine when a covenant not to sue violates public policy. There are, however, several cases in which the Supreme Judicial Court has found that enforcement of a covenant not to sue is not contrary to public policy. See Cormier, 416 Mass. at 289 (a waiver releasing operators of a motorcycle rider safety course from liability does not violate public policy); Minassian, 400 Mass. at 493 (release that relieved stable owner from liability for the loss or injury of horses did not violate public policy); Sharon, 437 Mass. at 105-06 (exculpatory clause that was a condition to participation in extracurricular sports did not offend public policy). Although the courts have been willing to uphold covenants not to sue within the context of these nonessential activities, the validity of such a release in the context of an essential activity is yet to be determined. The Sharon court, in addressing this issue, observed “(w]e have not had occasion to rule on the validity of releases required in the context of a compelled activity or as a condition for receipt of essential services (e.g., public education, medical attention, housing, public utilities), and the enforceability of mandatory releases in such circumstances might well offend public policy.” Sharon, 437 Mass. at 106.
In the present case, plaintiff argues that a public construction project is an essential service and, consequently, should not be enforced as a matter of public policy. The court disagrees with plaintiffs characterization of public construction as the type of essential service that the Sharon court anticipated. In Sharon, the court explicitly stated that a covenant not to sue might offend public policy if the receipt of essential services was conditioned upon it. Id. at 106. The concern raised by that situation— that exculpatory clauses will impede consumer access to services of practical necessity to the public — is not present in this business context. See generally Recent Cases, 102 Harv.L.Rev. 729 (1989) (discussing the nature of the activities in which it is appropriate or inappropriate to enforce a covenant not to sue). The renovation of an educational facility, the subject of the contract here, and the receipt of the education itself, are not, as plaintiff contends, analogous situations. On balance, the court concludes that the enforcement of the covenant here does not offend public policy.
Moreover, the court notes that the enforcement of the instant covenant not to sue furthers certain important public policies of the Commonwealth. First, as *449 noted previously, Massachusetts law favors the enforcement of releases. Lee v. Allied Sports Assocs., Inc., 349 Mass. 544, 550 (1965), cited in, Sharon, 437 Mass. at 105. Second, the enforcement of a covenant not to sue in this setting promotes an important benefit by keeping down the costs of public construction projects.
This court acknowledges the decision of Judge Sikora in Stone/Congress v. Town of Andover, 1997 WL 11737 (Mass.Super) [6 Mass. L. Rptr. 330], which declared unenforceable a covenant not to sue the project architect in a public construction setting. The court in Stone/Congress arrived at such a conclusion, in part, by focusing on the relation of the covenant not to sue to the other provisions in the contract. Most respectfully, this court believes that the court in Stone/Congress incorrectly emphasized that factor. The Supreme Judicial Court has observed that “the ordinary and natural scope and effect to be attributed to any article in a construction contract are not to be restricted or limited by undue emphasis accorded to some other provision.” J.F. Fitzgerald Construction Company v. Southbridge Water Supply Company, 304 Mass. 130, 135 (1939). In this case, the court looks to the unambiguous and comprehensive nature of the covenant at issue (“The contractor, or any successor, assign or subrogee of the contractor, agrees not to bring any civil suit, action or other proceeding in law, equity or arbitration against the architect. . .”). Given its clarity, the covenant should be enforced according to its terms. Mejia v. American Casualty Company, 55 Mass.App.Ct. 461 (2002); Freeloader v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970) (“When the words of the contract are not ambiguous, the contract will be enforced according to its terms”).
Plaintiffs, in reliance on Stone/Congress, argue that the covenant should not be enforced because it does not reflect the intent of the general contractor. In declining to construe the covenant not to sue as one exempting the architect from liability, the court in Stone/Congress opined, “(I]t seems implausible that the contractor would agree to such a meaning of the provision.” Stone/Congress, 1997WL 11737, *2. However, it is a well-settled principle that an unambiguous contract must be enforced according to its terms and the subjective contemplations of the parties are immaterial. See Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992); see also Cormier, 416 Mass. at 289. Even if subjective contemplations were material, the fact is that the agreement not to sue the architect does not leave the contractor without any remedy. The contractor’s claim against the contracting agency remains, and if it is successful, collectability is assured. Thus, there is no reason to be skeptical of the contractor’s acquiescence to the contract. Thus, this covenant, like any other ordinary contract, should be enforced according to its terms.
ORDER
For the foregoing reasons, defendant Perry Dean’s motion for summary judgment is ALLOWED.