NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1100

JEFFREY HAGOPIAN

vs.

GEOFFREY WILKINSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Jeffrey Hagopian, appeals from a Superior Court judgment allowing a motion to dismiss his complaint that alleged defamation by the defendant, Geoffrey Wilkinson. Because the plaintiff released any claims regarding the defendant's alleged defamatory conduct pursuant to a previous settlement agreement, we affirm.

Background. "We summarize the factual allegations in the plaintiff's complaint, supplemented by information drawn from the undisputed documents[, here, a settlement agreement,] referenced in that complaint. For the purposes of reviewing a motion to dismiss, we accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor."

Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 40 (2022).  The plaintiff is a graduate of the Massachusetts Maritime Academy (Academy), and the defendant is a member of the Academy's board of trustees (trustees).  In July 2019, the plaintiff wrote an open letter to the trustees taking issue with the Academy's partnership with his former employer.  In December of that year, the plaintiff once again raised this issue during an open meeting of the trustees.

In September 2021, the plaintiff attended an Academy presentation, after which he conversed with the defendant about his grievances from 2019.  The defendant threatened the plaintiff during the conversation and then alleged to the Academy president that the plaintiff had verbally and physically accosted him.  The next day, the Academy issued a no-trespass order prohibiting the plaintiff from entering Academy property. The plaintiff subsequently filed a civil rights lawsuit against the Academy in the United States District Court for the District of Massachusetts.[1]  The plaintiff and the Academy settled a short time after the filing of the suit.  In the settlement agreement, the Academy agreed to lift the no-trespass order and reimburse

---

[1] The plaintiff's Federal suit also named as defendants various Academy officials, in both their official and individual capacities, not including the defendant here, Wilkinson.  For convenience we refer to the Federal defendants collectively as the Academy.

the plaintiff's legal fees, while the plaintiff agreed to dismiss his complaint and give a broad release of any claims he may have had against the Academy and its affiliates. The relevant language of the release is as follows:

> "In consideration of . . . the Settlement Payment . . . and the Revocation of the No Trespass Orders . . . Hagopian . . . agrees to and hereby waives, releases and forever discharges all claims, demands, causes of action, fees, liabilities, grievances, suits, damages and expenses, and any and all other claims of every kind, nature, and description whatsoever, whether known or unknown, whether in law or equity, and whether or not previously asserted, in any forum, that Hagopian or any other person or entity on his behalf had or has against the Commonwealth; the Commonwealth's . . . officials, agents, officers, trustees, attorneys, successors, subsidiaries or affiliates, individually and in their official capacities . . . by reason of any actual or alleged act, omission, transaction, practice, conduct or occurrence arising out of or relating in any way to Hagopian's allegations set forth in the [Federal] Action, to the legally permissible extent, including, but not limited to, any claims under 42 U.S.C. § 1983, the Massachusetts Civil Rights Act, the Massachusetts Tort Claims Act, and the common law."

The plaintiff subsequently filed his defamation complaint against the defendant.

Discussion. "We review the allowance of a motion to dismiss de novo." Cubberley v. Commerce Ins. Co., 495 Mass. 289, 292 (2025), quoting Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). Dismissal is warranted where the complaint shows the existence of an affirmative defense.[2] See

---

[2] We note that the settlement agreement was not appended to the plaintiff's complaint, but rather to the defendant's answer. Although introduction of documents outside the pleading would

3

Doe v. Roman Catholic Bishop of Springfield, 490 Mass. 373, 386 (2022), citing Cavanagh v. Cavanagh, 396 Mass. 836, 838 (1986). A defendant may raise as an affirmative defense that the plaintiff previously released the defendant from any claims or liability. See Merrimack College v. KPMG LLP, 480 Mass. 614, 632 (2018).

The pertinent question in this case is whether the defendant's alleged conduct falls within the scope of the release the plaintiff signed with the Academy. As reflected above, the release language released all claims that Hagopian had against "the Commonwealth's . . . trustees . . . arising out of or relating in any way to Hagopian's allegations set forth in the [Federal] action." A release is a form of contract, see Sharon v. Newton, 437 Mass. 99, 105 (2002), and the "[i]nterpretation of a contract, including any ambiguities . . . in the disputed contract terms, is a question of law decided de novo by the reviewing court" (quotation and citation omitted). Helfman v. Northeastern Univ., 485 Mass. 308, 328 (2020). "In interpreting a contract, '[t]he objective is to construe [it] as a whole, in a reasonable and practical way, consistent with its

---

ordinarily convert the motion to one for summary judgment, conversion is not required "where the plaintiff had notice of the documents and relied on them in framing the complaint," which was the case here. Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 224 (2011). The plaintiff here acknowledges this rule.

4

language, background, and purpose.'" Downer & Co., LLC v. STI Holding, Inc., 76 Mass. App. Ct. 786, 792 (2010), quoting Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006). The defendant was a trustee of the Academy. The plaintiff raises two arguments as to why we nevertheless should interpret the release as excluding the defendant's alleged conduct.

First, the plaintiff argues that the release does not apply because the alleged defamation was an intentional tort, which he argues was expressly limited by the terms of the release. He points to the line "to the legally permissible extent" and argues that, because the Massachusetts Tort Claims Act (MTCA) immunizes the Commonwealth from claims arising from intentional tortfeasors, the defendant's intentionally tortious conduct cannot be indemnified by the Commonwealth and therefore a release that covers intentional torts would be legally impermissible. We disagree that the reference to the MTCA in the release has any such limiting effect in this case. Although the Commonwealth could not be held liable for the defendant's intentional tort, the plain language of the release also includes common law causes of action, which include defamation. See HipSaver, Inc. v. Kiel, 464 Mass. 517, 523 n.7 (2013) (noting defamation is of the common law). It is of no moment whether the Commonwealth could be forced to indemnify the

5

defendant -- it matters only whether the Commonwealth (or the Academy, an arm of the Commonwealth) chose to seek a release on his behalf.[3]

The plaintiff points to one case in which individual tort claims survived a settlement with a municipality, but it is clear that the settlement in question did not include a release for the individual claims. See Cachopa v. Stoughton, 72 Mass. App. Ct. 657, 664 (2008) (issue of mootness, not release). The same is true of the unpublished decision the plaintiff cites. The plaintiff identifies no legal authority, nor have we found any, standing for the proposition that it is not "legally permissible" for a settling party to seek a release of claims for intentional torts on behalf of other potential defendants. Here, by the plain language of the release, the Academy sought, and the plaintiff granted, a release of claims the plaintiff had against "the Commonwealth's . . . trustees, . . . individually and in their official capacities . . . arising out of or relating in any way to Hagopian's allegations . . . including . . . any claims under . . . the common law."

---

[3] The plaintiff also mistakes the extent of the limitations the MTCA imposes on indemnification of public employees for their intentional torts committed within the scope of their employment. Such indemnification is generally permitted, "in an amount not to exceed $1,000,000," unless the employee's act or omission constituted a "violation of . . . civil rights [and the employee] acted in a grossly negligent, willful or malicious manner." G. L. c. 258, § 9.

6

Second, the plaintiff argues that his complaint should not have been dismissed because the release he signed did not specifically identify the defendant's conduct.  Since the Academy could not have been directly liable for a defamation claim against the defendant, the plaintiff argues the release "cannot be reasonably interpreted" to apply to his claim here.  According to the plaintiff, this introduces ambiguity into the contractual terms of the release, which would convert the intent of the parties into a question of fact, see Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002), which then must be resolved in his favor at the motion to dismiss stage.  Lanier, 490 Mass. at 40.  To the contrary, the mere fact that the plaintiff may not have anticipated the result of the release he signed does not introduce ambiguity into the language.  See Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338, 342 (2021) ("ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other" [citation omitted]).  See also Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 792 (1996) (contracting party's "personal understanding" is irrelevant where terms are unambiguous).  Rather, "[g]enuine ambiguity requires language 'susceptible of more than one meaning [so that] reasonably intelligent persons would differ as to which meaning is the

7

proper one'" (citation omitted). <u>Basis Tech. Corp</u>. v.

<u>Amazon.com, Inc</u>., 71 Mass. App. Ct. 29, 36-37 (2008).

We see only one reasonable interpretation of the release --
that it applied to the defendant's conduct. As a trustee of the
Academy, the defendant falls into one of the categories
specifically enumerated in the release. In order to maintain
the facade of ambiguity, the plaintiff attempts to argue that
the defendant's defamatory conduct did not fit within the clause
releasing claims "arising out of or relating in any way to
Hagopian's allegations set forth in the [Federal] Action"
because there was no defamation claim in the Federal complaint.
But the scope of the release is tied to the <u>allegations</u> (not the
claims) in the Federal action. The plaintiff's Federal
complaint features essentially the same allegations of the
defendant's conduct as the ones that form the core of the
complaint in this case. The mere fact that the plaintiff
brought a suit with a different cause of action did not

8

transform the plaintiff's nearly identical recounting of events into wholly unrelated allegations.

Judgment affirmed.

By the Court (Sacks,
 Englander & Walsh, JJ.[4]),

*Paul Little*

Clerk

Entered:  August 8, 2025.

---

[4] The panelists are listed in order of seniority.